UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                                           :         Chapter 13

PAMELA KNAPPER                                      :

    Debtor                                          :         Bankruptcy No. 05-36519F

................................................

MEMORANDUM

................................................

Bankers Trust Company, acting as trustee for Amresco Residential Securities Corporation Mortgage Loan Trust 1998 (hereinafter "Bankers Trust"), has filed a motion to annul the bankruptcy stay pursuant to 11 U.S.C. § 362(d)(1). The motion for annulment of the stay submits three bases for relief: the failure of the debtor to give notice of her bankruptcy filing until after the completion of a state court litigation, Motion, ¶ 7; the debtor's bad faith in filing this chapter 13 case, Motion, ¶ 8; and the debtor's futile attempt to reorganize by retaining ownership of real estate previously sold to the movant by the Sheriff of Philadelphia County years ago, via foreclosure sale, Motion, ¶¶ 9-11.

The debtor opposes the relief sought by Bankers Trust. She contends that the bankruptcy stay should remain in place until the state court has resolved her challenge to the sheriff sale. Answer, ¶ 4. Alternatively, she argues in general that annulment is "extraordinary relief" which is not warranted in these circumstances. Answer, ¶ 5.

The chapter 13 trustee, after hearing all of the evidence presented and the arguments of counsel, stated in open court that he does not oppose the relief sought by Bankers Trust.

After an evidentiary hearing, the following facts were proven.

I.

The debtor filed the above-captioned chapter 13 case on October 13, 2005. This is the debtor's ninth bankruptcy filing since May 24, 1990. Ex. M-1. All nine cases were commenced as chapter 13 reorganization cases. Exs. M-1 to M-8.[1] The eighth case began on May 16, 2002, and involved an adversary proceeding commenced by the debtor against Bankers Trust seeking, inter alia, to set aside the foreclosure sale of the real property located at 8612 Gilbert Street, Philadelphia, Pennsylvania. The Third Circuit Court of Appeals held on May 24, 2005 that this bankruptcy court had no subject matter jurisdiction to hear the debtor's challenge to that sale. In re Knapper, 407 F.3d 573 (3d Cir. 2005). Shortly thereafter, on June 13, 2005, the debtor converted her chapter 13 case to one under chapter 7. She received her chapter 7 discharge on October 5, 2005 and her eighth case was closed on October 13, 2005.[2]

On April 10, 2002 (just prior to the debtor's filing of her eighth case), Bankers Trust, which had obtained title to the Gilbert Street property by sheriff's deed, see Ex. M-10, commenced an ejectment action in state court against the debtor in order to recover possession of the realty. Ex. M-12. On December 2, 2004—while the debtor's

---

[1] As debtor's counsel noted at the hearing, Bankers Trust offered in evidence copies of docket entries for eight bankruptcy filings, including the present case, but omitted one filing in 2002, docketed at Bankr. No. 02-17323.

[2] I take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017), of the docket entries of this prior case. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n.19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

eighth bankruptcy case was still pending, and prior to the Third Circuit ruling—the debtor initiated in state court a civil action against Bankers Trust challenging the latter's title to the Gilbert Street property and seeking to recover ownership of her former realty. Ex. M-11. In May 2005, the debtor sought to consolidate her 2004 state court lawsuit with the pending 2002 state court ejectment action. That consolidation request was granted by the state court on June 14, 2005. Ex. M-12.

On September 26, 2005, a non-jury trial was held on these two consolidated state court lawsuits. Exs. M-16 and M-17. On October 13, 2005, the debtor filed her ninth bankruptcy case under chapter 13. She did not, however, provide notice of the filing to Bankers Trust or to the state court until November 15, 2005, when she filed a suggestion of bankruptcy. Ex. M15; see also Motion, ¶ 7; Answer, ¶ 3.[3] Prior to such notice, on November 9, 2005, the state court issued its rulings against the debtor in both lawsuits. That is, on November 9, 2005, the state court entered judgment in ejectment in favor of Bankers Trust and also entered judgment in favor of Bankers Trust on the debtor's challenge to its ownership of the Gilbert Street realty. Ex. M-16.

---

[3]The debtor does not dispute the movant's allegation that no notice was given of the bankruptcy filing prior to the state court adjudication. Indeed, her counsel confirmed this fact at the evidentiary hearing. Rather the debtor asserts that she did not "unreasonably delay" such notice, Answer ¶ 3, and that Bankers Trust "could have easily surmised that the Debtor would make such a [bankruptcy] filing" prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, P.L. 109-8. Id. The effective date of that legislation was October 17, 2005.

Despite the debtor's contentions, for purposes of this motion to annul the stay, I find that neither the state court nor Bankers Trust either knew or should have known of her latest bankruptcy filing prior to November 15, 2005, when she filed a suggestion of bankruptcy with the state court.

3

On November 17, 2005, the debtor filed post-trial motions in state court. Those motions were still pending as of the date of the hearing on this motion to annul the bankruptcy stay, and are scheduled to be heard in state court on January 6, 2005.

Finally, the debtor has filed a proposed chapter 13 plan, dated October 24, 2005. Ex. M-14. Under this plan, she will pay the chapter 13 trustee only $50 per month for 36 months. Id., ¶ 2. The plan also provides that she will prosecute her state court lawsuit against Bankers Trust to recover title to the Gilbert Street property; and if successful, "with the help of her husband, who is presently on work release, she will provide sufficient payments to cure the defaults owed to Bankers." Id. at ¶ 3.[4] The trustee's report reflects that he has not received any plan payments from the debtor as of December 27, 2005. Ex. M-9. The debtor, however, testified that she recently tendered one payment and is one month delinquent in plan payments to the trustee.

II.

In general, the filing of a bankruptcy case stays the continuation of all lawsuits against the debtor by virtue of section 362(a)(1). See, e.g., Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991). Moreover, section 362(a)(3) of the Code enjoins not only actions to obtain property of the estate but also actions to obtain property "from the estate." Therefore, even though Ms. Knapper held no ownership

---

[4] The debtor's bankruptcy schedules I and J disclose monthly income of $2,000 and monthly expenses of $1,944. Ex. M-15. Those expenses do not include any rent or mortgage payments, although the debtor still resides in the Gilbert Street realty. Id. Thus, it would not appear that she could afford to cure any future mortgage obligation to Bankers Trust without substantial contributions from non-debtor individuals.

interest in the Gilbert Street realty on October 13, 2005 when she filed this bankruptcy case, clearly the property was in the debtor's possession. As such, the bankruptcy stay applied and Bankers Trust was required to seek relief from the stay in order to eject the debtor— that is, to oust her from possession. See In re Atlantic Business and Community Corp., 901 F.2d 325, 328 (3d Cir. 1990); In re 48th Street Steakhouse, Inc., 835 F.2d 427 (2d Cir. 1987), cert. denied, 485 U.S. 1035 (1988). As a result, the entry of a judgment in ejectment on November 9, 2005, which occurred post-petition, could be viewed as an improper violation of the bankruptcy stay.

Recognizing this problem, Bankers Trust now seeks to have the bankruptcy stay "annulled." Section 362(d) permits the automatic stay to be "terminat[ed], annull[ed], modif[ied] or condition[ed]." The Third Circuit Court of Appeals has explained that "the inclusion of the word 'annulling' in the statute indicates a legislative intent to apply certain types of relief retroactively and validate proceedings that would otherwise be void ab initio." In re Siciliano, 13 F.3d 748, 751 (3d Cir. 1994). In a subsequent decision, the Court of Appeals provided the following analysis of the bankruptcy stay and the power of a bankruptcy court to retroactively terminate it:

> The purpose of the automatic stay is twofold: (1) to protect the debtor, by stopping all collection efforts, harassment, and foreclosure actions, thereby giving the debtor a respite from creditors and a chance "to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him into bankruptcy;" and (2) to protect "creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors." Maritime Elec. Co. v. United Jersey Bank, 959 F.2d [1194] at 1204 [3d Cir. 1991].
>
> The stay is "automatic" because it is triggered upon the filing of a bankruptcy petition regardless of whether the other parties to the stayed proceeding are aware that a petition has

5

been filed. The automatic stay cannot be waived. Relief from the stay can be granted only by the bankruptcy court having jurisdiction over a debtor's case. Id. A party in interest may obtain relief from stay, pursuant to § 362(d)(1), by requesting the relief from the bankruptcy court and, after notice and a hearing, showing cause. 11 U.S.C. § 362(d)(1).

The automatic stay is of broad scope, directing that "[a]ll judicial actions against a debtor seeking recovery on a claim that were or could have been brought before commencement of a bankruptcy case, are automatically stayed." Maritime, 959 F.2d at 1203, 1206. Thus, "[o]nce triggered by a debtor's bankruptcy petition, the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor." Id. at 1206. Unless relief from the stay is granted, the stay continues until the bankruptcy case is dismissed or closed, or discharge is granted or denied. 11 U.S.C. § 362(c). Once a stay is in effect, without relief from the bankruptcy court, "the parties themselves [can]not validly undertake any judicial action material to the ... claim against" the debtor. Id. at 1207. This includes the filing of motions, which are void ab initio, unless the bankruptcy court later grants retroactive relief. [FN6] Id. at 1207, n. 13.

> FN6. Generally, judicial actions and proceedings against the debtor are void ab initio absent relief from the stay. Id. We have, however, recognized that section 362(d), which requires the bankruptcy court to grant relief from the stay under certain circumstances and permits such relief to be applied retroactively, would allow the bankruptcy court to grant annulment of a stay, thereby making acts in violation of the stay voidable, rather than void ab initio. See In re Siciliano, 13 F.3d 748, 750-51 (3d Cir. 1994).

Constitution Bank v. Tubbs, 68 F.3d 685, 691-92 (3d Cir. 1995) (emphasis added);

accord, e.g., Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc., 157 F.3d 169, 172 (2d Cir. 1998). In other words, section 362(d)(1) empowers this court to retroactively

validate the November 9, 2005 state court judgment in ejectment, which was in technical violation of the automatic stay, by virtue of the annulment of the stay.[5]

In general, whether to grant relief from the automatic stay under section 362(d)(1), including the decision whether to annul the stay, is left to the discretion of the bankruptcy court. See, e.g., In re National Environmental Waste Corp., 129 F.3d 1052, 1054 (9th Cir. 1997). In determining whether to exercise such discretion and retroactively terminate the stay, courts have noted that annulment of the stay is appropriate only in limited circumstances. See, e.g., In re Stockwell, 262 B.R. 275, 280 (Bankr. D. Vt. 2001). In order to help identify such circumstances, some courts have focused upon the following two factors:

> (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor.

In re National Environmental Waste Corp., 129 F.3d at 1055.

Other courts, in analyzing the factors needed to justify annulling the stay, parse these two factors into more specific elements:

> It is well recognized that a determination of whether to grant relief from stay retroactively is within the wide latitude of the Court with each decision being considered on a case-by-case basis. . . . The party seeking retroactive lift stay relief has the burden of proving that the action taken in violation of the stay falls within the narrow exceptions to the rule voiding actions taken in violation of the stay. . . . Similarly, under § 362(g), the debtor has the burden of proof with respect to showing equitable grounds for denying the requested relief. . . .

---

[5]To the extent that the debtor prosecuted a lawsuit against Bankers Trust postpetition, the automatic stay would not apply. See Maritime Elec. Co. v. United Jersey Bank, 959 F.2d at 1204-05.

7

> In order to determine whether the circumstances are sufficiently compelling to warrant nunc pro tunc lift stay relief, courts have considered a variety of factors:
>
>> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

In re Stockwell, 262 B.R. at 280-81 (citations omitted); see also In re Williams, 257 B.R. 297, 301 (Bankr. W.D. Mo. 2001).

In sum, courts have generally concluded that annulment of the stay should be limited to circumstances demonstrating "unfair prejudice" to a creditor, including consideration of whether the creditor seeking annulment had a valid legal basis for lifting the automatic stay at the time that the challenged action occurred, but failed to request such relief because it was unaware of any bankruptcy filing. See In re Syed, 238 B.R. 126, 133 (Bankr. N.D. Ill. 1999). In addition, because a creditor may obtain relief from the bankruptcy stay for "cause" under section 362(d)(1) whenever the evidence presented would support dismissal of the case due to a bad faith filing, see, e.g., In re Can-Alta Properties, Ltd., 87 B.R. 89, 91 (B.A.P. 9th Cir. 1988) (and cases cited); In re Harris, 192 B.R. 334, 337 (Bankr. W.D.N.Y. 1996); Matter of Nelson, 66 B.R. 231 (Bankr. D.N.J. 1986), aff'd without op., 838 F.2d 1207 (3d Cir. 1988); In re Augustus Court Associates, 43 B.R. 352, 354 (Bankr. E.D. Pa. 1984), it also follows that a court should consider the

good faith of a bankruptcy filing when determining the appropriateness of granting annulment relief under section 362(d)(1).

### III.

In determining the appropriate exercise of discretion under section 362(d)(1) under these facts, I observe that trial on Bankers Trust's ejectment action occurred in September 2005, prior to the debtor's bankruptcy filing. The state court decision dated November 9, 2005 granting judgment in ejectment was rendered postpetition, but without knowledge by either Bankers Trust or the state court of the pendency of Ms. Knapper's last bankruptcy filing. I also note that the ejectment trial was consolidated at the debtor's request with the trial on the debtor's lawsuit against Bankers Trust, which latter claim was not stayed by section 362(a). See Maritime Elec. Co. v. United Jersey Bank, 959 F.2d at 1205 ("Thus, within one case, actions against a debtor will be suspended even though closely related claims asserted by the debtor may continue.").

Had Bankers Trust known of the bankruptcy filing as soon as it occurred on October 13, 2005 and then sought to terminate the automatic stay, this entity would have been granted prospective relief from the bankruptcy stay in order to prosecute its pending ejectment action. There are a number of reasons for this conclusion.

First, where a debtor files bankruptcy after a matter has been tried in state court, but before an adjudication has been entered, a bankruptcy court will usually terminate the automatic stay to permit the completion of the lawsuit. Indeed, the

9

legislative history surrounding termination of the bankruptcy stay for cause under section 362(d)(1) contains the following statement:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy case will result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

S. Rep. No. 989, 95th Cong., 2d Sess. 50 (1978).

Based upon the above-quoted legislative history, courts have long recognized that it is within the sound discretion of the bankruptcy courts to grant relief from the automatic stay and thereby defer to a non-bankruptcy forum—which has jurisdiction over the dispute, and in which significant time and funds have already been expended—the resolution of pending litigation involving state law issues.  See, e.g., In re Robbins, 964 F.2d 342, 345-46 (4th Cir. 1992); Matter of Holtkamp, 669 F.2d 505 (7th Cir. 1982); In re Castlerock Properties, 781 F.2d 159, 163 (9th Cir. 1986); In re Olmstead, 608 F.2d 1365 (10th Cir. 1979); In re Hoffman, 33 B.R. 937 (Bankr. W.D. Okla. 1983); In re Philadelphia Athletic Club, Inc., 9 B.R. 280 (Bankr. E.D. Pa. 1981); 3 Collier on Bankruptcy, ¶ 362.07[3][a] at 362-84 (L. King, 15th ed. rev. 2003) ("[R]elief may also be granted when necessary to permit litigation to be concluded in another forum, particularly if the nonbankruptcy suit involves multiple parties or is ready for trial").

In this instance, as of October 2005, the state court ejectment lawsuit had been pending since 2002, or for more than three years.  A non-jury trial of this litigation had already occurred prepetition with the parties awaiting only the state court's decision. In addition, this lawsuit had also been consolidated with a related claim raised by the debtor: a claim which the Court of Appeals had previously held was outside the

jurisdiction of this bankruptcy forum and therefore could only be adjudicated in the state court system. Under these circumstances, there would have been no legitimate purpose served in continuing the bankruptcy stay and thereby precluding the state court from issuing its ruling on both matters. Accordingly, the bankruptcy stay would have been terminated in favor of Bankers Trust's prosecution of its ejectment action, had this entity known of the debtor's latest bankruptcy filing in October 2005.

Second, while the bankruptcy stay applies to property in the debtor's possession, even if the debtor does not have title to the property, such a possessory interest without any right of ownership or contractual right to possession is not much protected by the bankruptcy stay. Relief from the stay typically will be granted to the owner, or a secured creditor of the owner, except in the unusual circumstance where the debtor can demonstrate that the interest of the party seeking relief is adequately protected. See In re Moore & White Co., Inc., 83 B.R. 277, 281 (Bankr. E.D. Pa. 1988); see generally Zagata Fabricators, Inc. v. Superior Air Products, 893 F.2d 624, 627 (3d Cir. 1990) ("the failure of a debtor to pay rent affords the landlord the opportunity to convince the bankruptcy court to lift the stay and permit the landlord to seek an ejectment order from state court").

In considering the issue of adequate protection, a bankruptcy court must determine whether there is some legitimate purpose to be served in bankruptcy by keeping the debtor in possession of property owned by another, and in which she has no contractual right to possess. See generally First National Fidelity Corp. v. Perry, 945 F.2d 61 (3d Cir. 1991) (mortgagee properly granted relief from stay when chapter 13 filing occurred after foreclosure judgment—because, under bankruptcy law in effect at that

11

time, the debtor/homeowner was unable to use chapter 13 to cure the mortgage default); In re Halley, 70 B.R. 283 (E.D. Pa. 1987) (when mortgage loan matured prepetition, chapter 13 petition may not cure loan default and relief from the stay should be granted). If a bankruptcy filing serves no legitimate purpose in keeping the debtor in possession of realty in those circumstances, then the moving party should be granted relief from the stay to exercise its non-bankruptcy law rights to recover possession from the debtor. Id.

  In these particular circumstances, once the foreclosure sale of Ms. Knapper's interest in realty took place prior to her bankruptcy filing, the debtor had no right to cure or reinstate her mortgage under Pennsylvania law. See In re Brown, 75 B.R. 1009 (Bankr. E.D. Pa. 1987); In re Rouse, 48 B.R. 236 (Bankr. E.D. Pa. 1985). Nor does she have any right to cure this default in a chapter 13 proceeding under current federal bankruptcy law. 11 U.S.C. § 1322(c)(1). Essentially, in seeking to continue the automatic stay, Ms. Knapper proposes to litigate her non-bankruptcy claim against Bankers Trust in state court (persumably through posttrial motions and appeals) while remaining in possession of the realty. And as Bankers Trust is neither her mortgagee nor her lessor, she would remain in possession without any compensation being paid to the record owner of the property. Clearly, the debtor's position does not adequately protect the ownership interest of Bankers Trust; nor does it offer any legitimate purpose in continuing the bankruptcy stay.[6]

  Third, as mentioned earlier, this is the debtor's ninth attempt at reorganization, and it was filed on the same date that her eighth case was concluded. The

---

  [6]In light of the adverse state court ruling on November 9th, the debtor cannot persuasively argue that there is a likelihood of success on her challenge to Bankers Trust's ownership interest of the Gilbert Street property.

12

debtor offers no evidence to demonstrate that this ninth case is any different from the one that just ended, and in which she was unable to reorganize.

A bankruptcy reorganization petition filed without any legitimate prospect of reorganization is done in bad faith in that it only delays action under state law by creditors. That is, while the Code does not contain any express limitation on refiling a bankruptcy case after another is dismissed, many courts have recognized that it is inappropriate for a debtor to file another bankruptcy reorganization case (under chapters 11, 12 or 13) after dismissal of an earlier one, unless there has been a material change of circumstances which demonstrates that the second (or later) reorganization attempt now has a possibility of success after the first had failed. See generally, e.g., Matter of Elmwood Development Co., 964 F.2d 508 (5th Cir. 1992); In re Chisum, 847 F.2d 597 (9th Cir.), cert. denied sub nom., Mortgage Mart, Inc. v. Rechnitzer, 488 U.S. 892 (1988); In re Johnson, 708 F.2d 865 (2d Cir. 1983); In re Oglesby, 158 B.R. at 606 ("A genuine change in circumstances may justify a debtor's multiple filings."); In re McKissie, 103 B.R. 189, 192 (Bankr. N.D. Ill. 1989).

Therefore, when there are successive reorganization bankruptcy filings without any material changes in circumstances, the repeat filing is generally viewed to be in "bad faith." E.g., Matter of Elwood Development Co., 964 F.2d at 511-12; compare In re Barrett, 964 F.2d 588, 592 (6th Cir. 1992) (change in circumstances made the debtor's successful reorganization extremely likely and the filing undertaken in good faith). Since an earlier filing has been unsuccessful, there is little reason for a debtor to believe that another case will yield any different result. See In re Oglesby, 158 B.R. at 606 ("The bankruptcy court must concern itself with whether the debtor is merely trying

to frustrate the statutory requirements through a strategy of successive filings in an attempt to abuse the bankruptcy process.").

Indeed, serial or successive bankruptcy filings may be evidence of misuse of the bankruptcy process, intended only to forestall the foreclosure efforts of a secured creditor, and therefore not filed in good faith. See, e.g., In re Huerta, 137 B.R. 356, 367 (Bankr. C.D. Cal. 1992). The "kind of 'changed circumstances' required to justify a successive filing must be positive changes" reflecting on the debtor's ability to successfully reorganize under chapter 13. Id. at 368.

Moreover, when an individual has filed many failed reorganization cases, as in this instance, the need for evidence demonstrating a material change in circumstances supporting a reasonable possibility of reorganization grows heavier. See In re LeGree, 285 B.R. 615, 620 (Bankr. E.D. Pa. 2002). In addition, the serial filer may have abused the system with prior bad-faith filings and that conduct must also be considered before permitting a new petition. See id.

In determining whether a new filing would be in good faith, the bankruptcy court has the discretion to reach the appropriate result in a particular case based upon all of the circumstances. See In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996); Matter of Love, 957 F.2d 1350, 1354 (7th Cir. 1992); In re Mazzocone, 180 B.R. 782 (E.D. Pa. 1995). And in considering a debtor's good faith in filing, the Third Circuit Court of Appeals has placed the burden of persuasion upon the debtor. See In re Tamecki, 229 F.3d 205, 207 (3d Cir. 2000); In re SGL Carbon Corp., 200 F.3d 154, 162 n.10 (3d Cir. 1999). Essentially, once the creditor demonstrates that there have been serial filings, the debtor

14

must come forward with evidence demonstrating that the bankruptcy process is not being misused. See In re LeGree, 285 B.R. at 618.

Here, there is no evidence that this ninth bankruptcy filing is little more than an attempt by the debtor to obtain a stay of an ejectment action while she litigates her claim against Bankers Trust in state court. There was no evidence offered that the circumstances of this ninth filing are materially different from those present during her eighth filing, during which she was unable to complete the chapter 13 process.

Finally, as noted by the Fifth Circuit Court of Appeals in Matter of Pinetree, Ltd., 876 F.2d 34, 37 (5th Cir. 1989):

> Should the automatic stay have applied to nullify Mutual Benefit's foreclosure of Pinetree Plaza? Under the circumstances of this case, we hold that it should not. It is clear that absent bankruptcy, the debtor had no right enforceable against Mutual Benefit by virtue of its unrecorded deed in Pinetree Plaza. Were we to affirm the bankruptcy court's judgment that the automatic stay applied, the parties would be forced to readjudicate its removal, 11 U.S.C. § 362(d), and Mutual Benefit would have to conduct another foreclosure proceeding. Further redundancy and delay would needlessly result. Thus, where a creditor having no knowledge of a pending bankruptcy forecloses in good faith on the collateral, and where the debtor's interest in that collateral is unenforceable against that creditor, and where the debtor, although notified in advance of the foreclosure, failed to assert its status before the foreclosure, we conclude that the automatic stay should have been annulled with respect to the post-bankruptcy foreclosure.

Similarly, without knowledge of the debtor's bankruptcy filing, the state court ruled in November 2005 that Bankers Trust is entitled to possession of its realty. Bankers Trust did not know of the bankruptcy filing either, so there was no overreaching by the movant of federal law. Based upon the facts presented, there is no legitimate purpose served by holding that state court judgment invalid. (Indeed, were I to hold that

15

the November 9th judgment was improper under section 362(a), but also terminate the stay prospectively under section 362(d), one would assume that the state court would simply reissue its judgment, which is a needless expenditure of time and effort. Moreover, if the state court could be persuaded to hold that its earlier ejectment order was inconsistent with Pennsylvania law, it is now free to so rule in connection with the debtor's pending posttrial motions.)

Therefore, for all of the above-reasons, the bankruptcy stay will be annulled and both parties left to their remedies in state court.

An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re : Chapter 13

PAMELA KNAPPER :

     Debtor : Bankruptcy No. 05-36519F

................................................

ORDER

................................................

AND NOW, this 5th day of January 2006, for the reasons stated in the accompanying memorandum, it is hereby ordered that the motion of Bankers Trust Company, acting as trustee for Amresco Residential Securities Corporation Mortgage Loan Trust 1998, is granted and the bankruptcy stay is annulled pursuant to 11 U.S.C. § 362(d)(1), thus terminating the stay retroactively to October 14, 2005.

It is further ordered that Bankers Trust may exercise its state law rights to eject the debtor and recover possession of the real property located at 8612 Gilbert Street, Philadelphia, Pennsylvania. The stay is also lifted to that the debtor can exercise her state law rights seeking to vacate or overrule any ejectment judgment concerning the Gilbert Street realty.

It is further ordered that the ten day delay in the effective date of this order shall not apply. Fed. R. Bankr. P. 4001(a)(3). Thus, the hearing scheduled in state court for January 6, 2006 may take place.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Ms. Pamela Knapper
8612 Gilbert Street
Philadelphia, PA 19150

David A. Scholl, Esq.
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

Leslie E. Puida, Esq.
Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106-1532

William C. Miller, Esq.
Chapter 13 Trustee
111 S. Independence Mall, Suite 583
Philadelphia, PA 19106